Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5408 | DATE | 11/5/2002 |
| CASE TITLE | HIDROVIA, S.A. vs. GREAT LAKES DREDGE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss is granted and this case is dismissed without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 07 2002 | |
| | Notified counsel by telephone. | date docketed | 15 |
| ✓ | Docketing to mail notices. | G.Y. docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | |
| | Copy to judge/magistrate judge. | 02 NOV -6 AM 10:55 | |
| TBK | courtroom deputy's initials | FILED-6370 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

**DOCKETED**

**NOV 0 7 2002**

HIDROVIA, S.A., )
)
    Plaintiff, )
)
v. ) No. 02 C 5408
) Paul E. Plunkett, Senior Judge
GREAT LAKES DREDGE )
& DOCK CORPORATION, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Hidrovia, S.A., an Argentine corporation, has sued Great Lakes Dredge & Dock Corporation ("Great Lakes") for its alleged interference with Hidrovia's contract with the government of Argentina. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the motion is granted.

### Facts

Hidrovia is an Argentine corporation with its principal place of business in Buenos Aires, Argentina. (Compl. ¶ 4.) Hidrovia is operated as a joint venture by its principal shareholders Jan De Nul, N.V, a Belgian corporation with its principal place of business in Belgium, and Emepa, S.A, an Argentine corporation with its principal place of business in Buenos Aires, Argentina. (Id. ¶ 5-6.)

-1-

Great Lakes is a New Jersey corporation with its principal place of business in Oak Brook, Illinois. (Id. ¶ 7.)

In 1995, the government of Argentina awarded to Hidrovia the concession for dredging, signalization and operation of the Rio de la Plata and Parana River waterway. (Id. ¶ 14.) The concession requires Hidrovia to make substantial repairs and renovations to the 800 km waterway, its signals and navigational aids. (Id. ¶¶ 14-15.) The concession contemplates two sources of compensation for Hidrovia's work: tolls paid by the shippers that use the waterway and an annual subsidy of US $10 million paid by the Argentine government. (Id. ¶¶ 15-16.) Since 1995, Hidrovia has invested in excess of US $500 million to improve the waterway. (Id. ¶ 20.)

Originally, the contract for the concession had a ten-year term. (Id. ¶ 23.) In October 1997, however, the Argentine government extended it for eight years, until 2013, in exchange for Hidrovia's agreement to perform additional work. (Id.)

Sometime in 2001, Great Lakes "[p]ublicly announced, through the Argentine press and otherwise" its intention to replace Hidrovia as the concessionaire. (Id. ¶ 27a.) In addition, Great Lakes sent proposals to the Argentine government "that stated its willingness to take over the . . . concession and accept a far lower toll rate" than that granted to Hidrovia. (Id. ¶ 27b.)

Hidrovia says that Great Lakes' conduct has caused the Argentine government to suspend payments of the annual subsidy and to reduce the toll rate Hidrovia is permitted to charge. (Id. ¶ 37.) Great Lakes' public statements have also prompted the shippers who use the waterway to pressure the Argentine government to prevent Hidrovia from increasing the toll rate and to allow them to pay tolls in devalued Argentine currency instead of US dollars. (Id.) Hidrovia says that these actions have cost it hundreds of thousand of dollars, have damaged its relationship with the Argentine

government, the shippers who use the waterway and its goodwill in the marketplace generally. (Id.) Moreover, Hidrovia says, if Great Lakes persuades the Argentine government to replace Hidrovia as the concessionaire, it will suffer damages in excess of US $500 million. (Id. ¶ 38.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

## Discussion

"A federal court sitting in diversity applies the choice of law rules of the state in which it sits." Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 504 (7th Cir. 1998). In tort cases, the Illinois courts use the most significant relationship test to determine the applicable law. Id. Under that test, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." Esser v. McIntyre, 661 N.E.2d 1138, 1141 (Ill. 1996). In applying this test, we consider where the injury and the injury-causing conduct occurred, the domicile, nationality, place of incorporation and place of business of the parties and the place where the parties' relationship is centered. Id.; Ingersoll v. Klein, 262 N.E.2d 593, 596 (Ill. 1970).

Great Lakes, a New Jersey corporation with its principal place of business in Illinois, is the only entity involved in this suit that is connected to Illinois. (Compl. ¶ 7.) Hidrovia, which was

formed specifically to operate the waterway, is an Argentine company with its principal place of business in Argentina. (Id. ¶¶ 4, 18.) Hidrovia is a joint venture of Jan De Nul, N.V., a Belgian company with its principal place of business in Belgium, and Emepa, S.A., an Argentine company with its principal place of business in Argentina. (Id. ¶¶ 5-6.) Thus, Illinois is not closely related to the companies involved in this suit.

Illinois is also not the situs of the injury alleged in this case. Hidrovia says that Great Lakes' actions cost it "hundreds of thousands of dollars in toll revenue" and have harmed "Hidrovia's goodwill, in terms of its relationship with Argentina . . . , the shipping interests using the Waterway and in the marketplace in general." (Id. ¶ 37.) Because Hidrovia is an Argentine corporation based in Argentina, it suffered those injuries in Argentina.

The parties' relationship is also centered in Argentina. This whole dispute revolves around a concession granted by the Argentine government to operate a waterway in Argentina. Absent that concession, Hidrovia, which "can only exist for the purpose of performing the concession" and "is required to cease its operation . . . upon the [concession's] termination," would have had no interaction with Great Lakes. (See id. ¶ 18.) Thus, Argentina is the linchpin of the parties' relationship.

Illinois does, however, have some connection to the allegedly wrongful conduct. Hidrovia says it was harmed by Great Lakes' "announce[ment], through the Argentine press and otherwise" of its intention to replace Hidrovia as concessionaire and by the proposals to the same effect that it sent to the Argentine government. (Id. ¶ 27a, b). Though Hidrovia does not allege whether the statements to the Argentine media were made in Illinois, Argentina or elsewhere, the proposals were

sent from Illinois. (Id.) Thus, at least some of Great Lakes' wrongful conduct is alleged to have occurred in Illinois.

If the number of contacts were the deciding factor, clearly Argentina would win. But it is not. Rather, as Hidrovia points out, the contacts must be evaluated in light of the "'interests and public policies of potentially concerned states . . . as they relate to the transaction in issue.'" Fredrick, 144 F.3d at 504 ((quoting Jones v. State Farm Mut. Auto Ins. Co., 682 N.E.2d 238, 249 (Ill. App. Ct. 1997)). In Hidrovia's view, Illinois' interest in deterring and punishing the kind of conduct alleged here makes its interest in this suit superior to Argentina's.

The Court disagrees. The parties' dispute arises from a contract between Hidrovia, an Argentine company that is owned jointly by an Argentine and a Belgian company, and the Argentine government to operate a waterway in Argentina. Great Lakes is alleged to be interfering with that contract by pressuring the Argentine government, both directly and through the shippers who use the waterway, to terminate its relationship with Hidrovia. Given the international flavor of this dispute, and the Argentine government's intimate involvement in it, it hardly seems appropriate to allow Illinois law to dictate the result. Illinois' interest in regulating Great Lakes' behavior, though valid, does not trump a sovereign nation's interest in defining acceptable conduct for the transactions that occur within its borders, particularly those to which its government is a party.

In sum, Argentina not only has a greater number of contacts with this dispute, it has a greater interest in having its law apply to this dispute. Because Argentina is the jurisdiction with the most significant relationship to this case, its law applies.

Great Lakes asserts, without contradiction by Hidrovia, that a viable claim of tortious interference can be stated under Argentine law only if Hidrovia alleges that Great Lakes' conduct

caused the Argentine government to breach the concession contract. (See Def.'s Mem. Law Supp. Mot. Dismiss, Ex. A, Rolon Aff.; Pl.'s Resp. Def.'s Mot. Dismiss at 11.) Hidrovia has made no such allegation. On the contrary, Hidrovia alleges that the contract remains in full force and effect. (Compl. ¶¶ 23, 29-34, 38-39.) Because Hidrovia has affirmatively alleged that the Argentine government has not breached the concession contract, its tortious interference claim must be dismissed.

The result would be the same, even if Illinois law applied to this case. As Hidrovia points out, an allegation of breach is not a prerequisite to an interference claim under Illinois law. Rather, "the scope of the cause of action is broader and encompasses the situation in which the defendant prevents the plaintiff from performing the contract." Scholwin v. Johnson, 498 N.E.2d 249, 255 (Ill. App. Ct. 1986). But Hidrovia alleges that Great Lakes' actions have rendered its performance more burdensome, not impossible. Hidrovia says that allegation is sufficient, but it has not proffered, and we could not find, a single Illinois case in which allegations of increased burden were held sufficient to state a tortious interference of contract claim.

In the absence of supportive case law, Hidrovia turns to the Restatement of Torts, which defines the tort of contractual interference very liberally:

> One who intentionally and improperly interferes with the performance of a contract ... between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

RESTATEMENT (SECOND) OF TORTS § 766A. Though the Illinois courts have espoused the prevention of performance component of that section, they have yet to adopt the more expensive or burdensome component. On the contrary, as the Seventh Circuit noted:

> Illinois case law reveals no ruling that a cause of action for tortious interference with contract can be stated on the basis of "adverse impact" or "hindrance of contract." With respect to the breach element of tortious interference with contract, both the Illinois Supreme Court and the Illinois Appellate Court consistently require more than conduct rendering performance of the contract more burdensome, writing in terms of requiring either a breach of contract, termination of the contractual relations, or rendering performance impossible.

George A. Fuller Co. v. Chicago Coll. of Osteopathic Med., 719 F.2d 1326, 1330-31 (7th Cir. 1983).

Thus, even if Illinois law applied to this dispute, Hidrovia's claim would still have to be dismissed.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss is granted and this case is dismissed without prejudice.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: November 5, 2002